IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAULA BROWNSTEIN,<br><br>                Plaintiff,<br><br>    v.<br><br>MERCK AND COMPANY,<br><br>                Defendant. | Civil Action No. 1:14-cv-01705-ABJ |

**DEFENDANT'S MOTION IN LIMINE NO. 10
TO PRECLUDE REFERENCES TO "THALIDOMIDE"**

The "Thalidomide Tragedy" has been characterized as one of the worst cases of birth defects resulting from *in utero* exposure to a medication. Thousands of children were born with severe birth defects following their mothers' use of thalidomide while the children were *in utero*, and their stories continue to be told in major publications. Obviously, thalidomide and dienestrol are two very different drugs. Yet Plaintiff intends to refer to "thalidomide" and offer evidence regarding the "Thalidomide Tragedy" at trial. Allowing jurors to associate thalidomide or the Thalidomide Tragedy with dienestrol would be extremely prejudicial to Merck. Thus, references to "thalidomide" must be precluded under Federal Rule of Evidence 403.

**I.    FACTS**

  A.  <u>Plaintiff's Claims</u>

Plaintiff claims that while she was *in utero*, her mother ingested dienestrol manufactured by Defendant's predecessor, White Laboratories. Status Conf. Tr. 3:13-16 Mar. 8, 2017 (attached hereto as **Exhibit A**). According to Plaintiff, her *in utero* exposure to White Laboratories' dienestrol caused her to be born with a T-shaped uterus, which left her unable to conceive or carry a child to term. *Id.* 3:17-20. On summary judgment, this Court struck Plaintiff's claim for

inability to conceive and limited Plaintiff's potential recovery to inability to carry a child to term. *Id.* 32:24-33:19.  Specifically, the Court found that "plaintiff will have to prove that defendant's Dienestrol caused her inability to carry her two pregnancies to term." *Id.* 33:17-19.

Plaintiff, through her counsel and her witnesses, intends to reference "thalidomide," and offer evidence regarding the "Thalidomide Tragedy" and its alleged effect on the standard of care for pharmaceutical companies that manufacture and market medications ingested during pregnancy.  Indeed, Plaintiff has attempted to tie thalidomide and dienestrol together from the beginning of this case, alleging in her Complaint that, "[i]n 1962, thalidomide stories broke, putting the whole world on notice of the danger of giving drugs to pregnant women, . . . ." Compl. ¶ 20.  Then, in opposing Merck's motion for summary judgment, Plaintiff recited essentially the same thing.  *See* Dkt. 28-1 at 13 ("In 1962, five years before Plaintiff's exposure, the thalidomide disaster broke putting the entire world on notice of the danger of giving drugs to pregnant women and the need to do prenatal and transplacental studies on drugs used during pregnancy.").  Plaintiff's regulatory expert, Dr. Laura Plunkett, also refers to the thalidomide tragedy and its alleged effect on the standard of care for pharmaceutical manufacturers.  Expert Rep. of Laura M. Plunkett, Ph.D., DABT ("Plunkett Rep.") ¶¶ 15, 23 (attached hereto as **Exhibit B**).[1]

  B. <u>Thalidomide Tragedy and Its Current Coverage</u>

Thalidomide was a drug prescribed for morning sickness in the 1950s and 1960s.  Before its eventual removal from international markets in 1962, an estimated 10,000 children had been born with birth defects associated with *in utero* exposure to thalidomide. Carl Zimmer, *Answers*

---

[1] Merck's regulatory expert, Dr. Dena Hixon, also discusses thalidomide.  If the Court grants this Motion, Merck will instruct Dr. Hixon to use a euphemism when discussing thalidomide.

*Begin to Emerge on How Thalidomide Caused Defects*, N.Y. Times, Mar. 15, 2010, *available at*, http://www.nytimes.com/2010/03/16/science/16limb.html (attached hereto as **Exhibit C**).

Although thalidomide has not been prescribed to pregnant women in over 50 years, and although it was never approved for use by pregnant women in the United States, media coverage regarding the effects of *in utero* exposure to thalidomide has continued over the past few years. In 2014, the year Plaintiff filed this lawsuit, both the *Huffington Post* and NPR ran stories about people affected by their *in utero* exposure to thalidomide. Eileen Cronin and Michele Botwin Raphael, *Born Without Arms or Legs: The Secret Legacy of Thalidomide*, Huffington Post, Aug. 21, 2014, *available at*, http://www.huffingtonpost.com/eileen-cronin/thalidomide_b_5669839.html (attached hereto as **Exhibit D**); Lauren Frayer, *Thalidomide Victims in Spain Still Waiting for Compensation*, NPR, Dec. 28, 2014, *available at*, http://www.npr.org/2014/12/28/370149721/thalidomide-victims-in-spain-still-waiting-for-compensation (attached hereto as **Exhibit E**). Last year, *Bloomberg News* ran an article discussing thalidomide and its re-branding for use as a cancer treatment. Jef Feeley and Doni Bloomfield, *From Nightmare Drug to Celgene Blockbuster, Thalidomide is Back*, Bloomberg, Aug. 22, 2016, *available at*, https://www.bloomberg.com/news/articles/2016-08-22/from-nightmare-drug-to-celgene-blockbuster-thalidomide-is-back (attached hereto as **Exhibit F**). In fact, just a few weeks ago, a popular podcast, Industry Focus: Healthcare, released an episode discussing the thalidomide tragedy and its impact on how drugs were researched, marketed, and sold. Bagy Lapera and Kristine Harjes, *How a Tragedy Changed How Drugs are Sold*, The Motley Fool, May 30, 2017, *available at*, https://www.fool.com/investing/2017/05/30/how-a-tragedy-changed-how-drugs-are-sold.aspx (attached hereto as **Exhibit G**). Finally, the most recent season of a popular show available to stream on Amazon, *Call the Midwife*, includes a

story line of a baby born with defects due to exposure to thalidomide. Ellie Walker-Arnott, *Call the Midwife: what is thalidomide*, Radio Times, June 2, 2017, *available at*, http://www.radiotimes.com/news/2017-06-02/call-the-midwife-what-is-thalidomide (attached hereto as **Exhibit H**).[2]

## II.  LEGAL STANDARD

Under Rule 402, "[i]rrelevant evidence is not admissible." *See also United States v. O'Neal*, 844 F.3d 271, 278 (D.C. Cir. 2016).  The party introducing the evidence has the burden to show both relevancy and admissibility. *Daniels v. Dist. of Columbia*, 15 F. Supp. 3d 62, 66 (D.D.C. 2014) (citing *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990)).  "Although the definition of 'relevant evidence' given in Federal Rule of Evidence 401 is broad, it does have limits." *United States v. Hollister*, 746 F.2d 420, 422 (8th Cir. 1984).  Evidence is only relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Even if evidence is relevant, it should not be admitted if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid.

---

[2] That thalidomide remains a part of the cultural zeitgeist is evidenced by the many mentions of it that arise even in coverage that does not directly concern it.  Examples of this sort from just the last few weeks are legion. *See, e.g.*, Ralph W. Carr, *Changing our Constitution sounds great, but . . .*, St. Cloud Times (June 14, 2017) (attached hereto as **Exhibit I**) (challenging the suggestion that the FDA be abolished by discussing "Thalidomide babies"); Randy S. Mitchell, *'Opoids will kill you' – be sure your family knows*, Arizona Republic (June 8, 2017) (attached hereto as **Exhibit J**) (drawing an analogy between beneficial uses of opiates and beneficial uses of thalidomide, "the scourge of the world"); Tom Herzog, *Drug costs in large part due to big pharma*, Oshkosh Northwestern (June 4, 2017) (attached hereto as **Exhibit K**) (arguing that drugs are overpriced by emphasizing "such notable quality failures as thalidomide"); Ted Kaufman, *Despite headlines, regulations protect you every day*, News Journal (Wilmington, Delaware) (May 28, 2017) (attached hereto as **Exhibit L**) (suggesting that budget cuts could lead to "more news stories about Flint-like water or E. coli tainted hamburger or Thalidomide-like drug tragedies").

403; *see also Flythe v. Dist. of Columbia*, 4 F. Supp. 3d 222, 226 (D.D.C. 2014). The court's role in a Rule 403 analysis is to "engage in on-the-spot balancing of probative value and prejudice and . . . exclude even factually relevant evidence when it fails the balancing test." *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011 (internal quotation omitted). "Unfair prejudice within [the Rule 403] context means an undue tendency to suggest [making a] decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013).

**III.    ARGUMENT**

References to "thalidomide" or the "thalidomide tragedy" in this case are unduly prejudicial given the high likelihood that such references will evoke images of severe birth defects that are not at issue in this case. *See* Plunkett Dep. 99:11-100:16, Jan. 28, 2016 (attached hereto as **Exhibit M**). Other courts agree and have precluded parties from explicitly referencing "thalidomide" at trial. *Richardson v. Richardson-Merrell, Inc.*, 649 F. Supp. 799, 799 n.1 (D.D.C. 1986); *In re Richardson-Merrell, Inc. "Bendectin" Prods. Liab. Litig.*, 624 F. Supp. 1212, 1236-37 (S.D. Ohio 1985), *affirmed, In re Benedictin Litig.*, 857 F.2d 290, 321-22 (6th Cir. 1988). A high danger of undue prejudice arises from referring to "thalidomide" in litigation involving other pharmaceuticals. *See In re Depakote*, No. 14-cv-847, 2015 WL 4775937, at *5 (S.D. Ill. Feb. 20, 2015). Thus, courts have instructed the parties to use euphemisms, such as "maybe the most powerful teratogen known to man" and "the most devastating teratogen that we know" or "MRL-41" instead of "thalidomide" when discussing the drug. *In re Bendectin Litig.*, 857 F.2d at 322; *Richards*, 649 F. Supp. at 799 n.1.

Although some time has passed since the initial tragedy, thalidomide remains an issue of interest to many. Certainly, one district court was "skeptical" about the prejudicial effect of discussing thalidomide because some time has passed since thalidomide's teratogenicity was

discovered. *Rheinfrank v. Abbott Labs., Inc.*, No. 1:13-cv-144, 2015 WL 5258858, at *9 (S.D. Ohio Sept. 10, 2015). But given the recent influx of coverage about thalidomide, even since *Rheinfrank* was decided in September 2015, "thalidomide" remains at the forefront of American consciousness when it comes to severe birth defects. The time that has passed must be balanced against the scale of the tragedy. Courts have been willing to exclude mention, for instance, of drugs that were subject to "public attention" merely because of litigation. *See, e.g.*, *Am. Home Assurance Co. v. Merck & Co., Inc.*, 462 F. Supp. 2d 435, 446 (S.D.N.Y. 2006) (excluding mention of the drug name "Vioxx"). If press coverage of a few lawsuits is enough reason to exclude such a reference, then surely use of the term "thalidomide"—which speaks to one of the most well-known and inflammatory instances of a "drug defect"—is still unduly prejudicial.

Thus, any reference to "thalidomide," including the "Thalidomide Tragedy," should be excluded under Rule 403.

## IV. CONCLUSION

For these reasons, Defendant Merck and Company respectfully requests that the Court grant this Motion, and prohibit Plaintiff, her attorneys, and her witnesses from referring to "thalidomide."

Dated:  June 19, 2017                        Respectfully submitted,

               */s/ Brianna Lynn Silverstein*
              Thomas F. Campion (admitted *pro hac vice*)
              Heidi E. Hilgendorff (admitted *pro hac vice*)
              DRINKER BIDDLE & REATH LLP
              600 Campus Dr.
              Florham Park, NJ 07932-1047
              Tele: (973) 549-7000
              Thomas.Campion@dbr.com
              Heidi.Hilgendorff@dbr.com

              Cheryl A. Bush (admitted *pro hac vice*)
              Michael R. Williams (#994953)
              BUSH SEYFERTH & PAIGE PLLC
              3001 West Big Beaver Road, Suite 600
              Troy, MI 48084
              Tele: (248) 822-7000
              Bush@bsplaw.com
              Williams@bsplaw.com

              Brianna Lynn Silverstein (#997831)
              DRINKER BIDDLE & REATH LLP
              1500 K Street, N.W., Suite 1100
              Washington, D.C. 20005-1209
              Tele: (202) 230-5136
              Brianna.Silverstein@dbr.com

              *Counsel for Defendant Merck and Company*

**LCvR 7(m) CERTIFICATE**

Pursuant to Local Civil Rule 7(m), the parties met and conferred as required on May 16, 2017 via phone.  The parties could not resolve this matter and the Motion is opposed.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2017, a true and correct copy of the foregoing document was filed via the CM/ECF system, which will send a notice (NEF) to all registered users who have entered an appearance in this case.

*/s/ Brianna Lynn Silverstein*
Brianna Lynn Silverstein